IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| SUE D. SALTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 07-G-0155-J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Sue D. Salter, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether she has a severe impairment;

(3)    whether her impairment meets or equals one listed by the Secretary;

(4)    whether the claimant can perform her past work; and

> (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Debra H. Goldstein determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," she did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to her prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself.</u> Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.</u> See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

5

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

**THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED**

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other

hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.  The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.

## DISCUSSION

In her November 5, 2005, decision, the ALJ found that the plaintiff suffers the following severe impairments:

> status post lumbar strain in December 1996; herniated nucleus pulposus at L5-S1 on the right, which distorts the thecal sac and displaces the traversing right S1 nerve root; leftward bulging disc at L4-5, resulting in foraminal stenosis at L4-5; diffuse disc bulge/possible herniation at L2-3; chronic low back pain, which radiates down her legs predominately along the L5-S1 nerve root distribution, but also along the L4-5 nerve root distribution; asthma; hypertension; seizures (only since 2000, as documented in Exhibits B-1F, 16F, and 22F); and problems with her thumbs (since 2004)."

[R. 40]. Indeed, in early January 1997, the plaintiff was seen at the Carraway Medical Center Emergency Room for a lumbar strain. A January 16, 1997, MRI showed a herniated nucleus pulposus[1] on the right at L5-S1, and a diffuse disc bulge, possibly some component of disc herniation at L2-3. [R. Att.1, pg 163]. The plaintiff was treated by Robert Q. Craddock, M.D., who reviewed the MRI scan and opined "[s]he certainly does have a disc herniation at L5-S1 on the right, but I believe this is just a bulge at L2-3." [R. Att. 1, pg 176]. On examination, Dr. Craddock noted the plaintiff could only flex 30 degrees, that extension and side-bending were markedly limited, and that a straight leg raising test was positive on the right. [Id.]. Dr. Craddock scheduled a lumbar myelogram for January 29, 1997, but this was not done because of problems with her worker's compensation coverage. [R. Att. 1, pg 216].

---

[1] A rupture or prolapse of the nucleus pulposus into the spinal canal. Dorland's Illustrated Medical Dictionary 758 (27th Edition).

On June 23, 1997, the plaintiff was seen by Ben Fulmer, M.D., a Disability Determination Service (DDS) consultative examiner. [R. 230-232]. Dr. Fulmer noted positive straight leg raising at 75 degrees on the right, and marked tenderness in her lumbar spine on the right side with pain to palpation. [R. 231]. Dr. Fulmer concluded:

> this claimant's ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying objects, hearing, speaking and traveling is affected mainly by low back pain and R leg pain. She has sciatica which she says is due to herniated disc. She says she needs an operation. She does have some evidence of some L4 or L5 radiculopathy.

[Id.].

In connection with her worker's compensation case, the plaintiff was seen on February 2, 1998, by Jo H. Spradling, a vocational consultant, who stated:

> Dr. Craddock has rendered conservative medical management of epidural blocks and medications, although he has recommended surgery which has not yet been carried out.[2] Ms. Salter states that her medical care has been limited to date as she possesses no medical coverage. As a result of this, Ms. Salter's condition is definitely worsening. She suffers constant severe pain in her lumbar area, right hip and right lower extremity.

[R. Att. 1, pg 209]. The vocational consultant's opinion was that the plaintiff's "current functional limitations, it is obvious she is unable to return to any of her pre-injury occupations, or even compete for alternate, less physically demanding employment opportunities in the labor force. Her overall employability has been greatly diminished as

---

[2] At her hearing, when asked why she did not undergo the surgery, the plaintiff testified that Dr. Craddock "said that he didn't give me much of a chance after surgery to walk because it may, he may, it may go in to pinch a nerve and there wouldn't be nothing they could do about it." [R. 410].

9

a direct result of her December, 1996 back injury and subsequent unresolved medical problems." [R. Att 1, pg 211].

On April 16, 1998, Dr. Craddock completed a Physical Capacities Evaluation in which he limited the plaintiff to lifting or carrying 10 pounds occasionally or less frequently, sitting for five hours in an eight-hour day, and standing and walking for two hours in an eight-hour day. [R. 217]. He stated that the plaintiff required a cane to assist in walking, and that she was restricted from pushing and pulling movements, climbing stairs and ladders and balancing, bending or stooping movements, reaching, and operating motor vehicles. [Id.]. Dr. Craddock's opinion was that lumbar nerve root compression was the reason for these restrictions. [Id.]. In a Clinical Assessment of Pain form completed by Dr. Craddock, he found that pain is present to such an extent as to be distracting to adequate performance of daily activities or work. [R. 218]. He also thought that physical activity, such as walking, standing, bending, stooping, and moving of extremities would result in greatly increased pain to such a degree as to cause distraction from tasks or total abandonment of tasks. [Id.]. Dr. Craddock estimated that the plaintiff's drug side effects would be expected to be severe, and to limit effectiveness because of distraction, inattention and drowsiness. [R. 219]. Finally, Dr. Craddock opined that the plaintiff has an underlying condition consistent with the pain she

experiences. [Id.] Because Dr. Craddock is a specialist in the field of neurosurgery, his opinion is entitled to more weight in this area.[3]

In her opinion, the ALJ summarized the plaintiff's treatment and diagnosis as follows:

> Magnetic resonance imaging of the claimant's lumbar spine without contrast on October 27, 1997, showed her to have a herniated nucleus pulposus at L5-S1 on the right; a leftward bulging disc resulting in foraminal stenosis at L4-5; and diffuse degenerative disc disease, with the disease at L4-5 and L5-S1 essentially unchanged since January 1997, and with some interval improvement in the claimant's degenerative disc disease at L2-3 since her prior examination. The claimant was diagnosed as having acute lower back pain secondary to a bulging disc at L4-5 on the left, and nonphysiologic sensation loss in her left leg. Her lower back pain and leg pain resolved after she was given a lumbar epidural steroid injection.

[R. 23]. The ALJ also discussed another MRI: "Magnetic resonance imaging on July 9, 1999, ***showed the same problems*** as the magnetic resonance imaging from October 27, 1997." [R. 33](emphasis added)   In discrediting Dr. Craddock's opinion, the ALJ stated:

> The undersigned has carefully considered Dr. Craddock's letter of April 17, 1998, together with the physical capacities evaluation form and the clinical assessment of pain form that he completed within a week before writing that letter but almost six months after he had last treated the claimant (Exhibits AC-1, 23F, and B-11F), but finds Dr. Craddock's assessment regarding the claimant's level of pain and her inability to work 8 hours per day to be inconsistent with, and outweighed by, the evidence that (1) the claimant obtained relief following her lumbar epidural injection in October 1997 (Exhibit 5F), and (2) magnetic resonance imaging on July 9, 1999 (Exhibit 11F) ***was unchanged*** from the claimant's magnetic resonance imaging on October 27, 1997 (Exhibit 5F).

---

[3] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

11

[R. 38].(emphasis added)   The reasons articulated by the ALJ in discrediting Dr. Craddock, the plaintiff's treating neurosurgeon, are not supported by substantial evidence. That the plaintiff obtained relief from an epidural block does not mean that the relief was permanent. It was material error for the ALJ to assume so.  Moreover, the ALJ's second reason for discrediting Dr. Craddock (that the July 1999 MRI was unchanged from the October 1997 MRI) is utterly nonsensical.  The ALJ made a finding that:

> The assessment of the claimant's former treating physician, Dr. Robert Q. Craddock, contained in Exhibits AC-1, 23F, and B-11F, *is credible only for the period from December 29, 1996, when the claimant strained her back, through October 27, 1997, the last day on which he treated the claimant*, and also the day on which the claimant obtained pain relief from a successful lumbar epidural block.

[R. 41].(emphasis added)   If Dr. Craddock's testimony was credible as of October 27, 1997, and the July 9, 1999, MRI was unchanged from the October 27, 1997, MRI, then it must be assumed that the underlying medical condition causing the plaintiff's pain was still present in 1999, and his testimony is credible for that time period as well.  Therefore, because the ALJ failed to properly refute Dr. Craddock's testimony, as a matter of law it must be taken as true.

The ALJ found "the claimant's restriction to light work with a sit/stand option prevents her from performing any of her past work.  Therefore, the burden shifts to the Commissioner of Social Security to show that there are other jobs that exist . . . ." [R. 39].  She went on to find "[The VE] testified that *pain of moderately severe to severe degree would prevent performance of any work*, and that seizures occurring more often

that once a month during working hours would preclude work." [Id.].(emphasis added) Dr. Craddock's opinion was that the plaintiff's pain would distract her from the adequate performance of daily activities or work. Taking Dr. Craddock's opinion as true, the expert vocational testimony was that the plaintiff would not be able to perform any jobs.

## CONCLUSION

For the reasons set forth above, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 15 May 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.